IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KEVIN TADTMAN,<br><br>    Plaintiff,<br><br>v.<br><br>INTOUCH GROUP, LLC,<br><br>    Defendant. | Case No. 2:20-cv-2417 |

## COMPLAINT

Plaintiff Kevin Tadtman ("Tadtman" or "Plaintiff"), for his Complaint Defendant Intouch Group, LLC ("Intouch Solutions" or "Defendant") and states and alleges as follows:

## PARTIES

1. Plaintiff Kevin Tadtman is a resident of the State of Kansas.

2. Defendant Intouch Solutions is a limited liability company organized under the laws of the State of Kansas doing business in the State of Kansas at 7045 College Boulevard, Suite 300, Overland Park, Kansas 66211.

3. Defendant Intouch Solutions employed Plaintiff from March 5, 2019, until the unlawful termination of his employment on June 12, 2020.

4. At all times relevant herein, each of the officers, agents, and employees of Defendant Intouch Solutions identified herein were acting within the course and scope of their employment with Defendant Intouch Solutions.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this cause of action pursuant to 28 U.S.C. § 1331, 1337, and 1343(a)(4), as well as 42 U.S.C. § 2000e-5(f).

6. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action. With respect to the unlawful employment practices alleged herein, a

timely Charge of Discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") on June 23, 2020.  The Charge of Discrimination was filed within 180 days of the most recent incident of discrimination alleged therein.  A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto and incorporated by reference as Exhibit A.

7.      On August 14, 2020, Plaintiff was issued his Notice of Right to Sue, authorizing him to proceed with his claims within 90 days thereafter.  A true and correct copy of Plaintiff's Notice of Right to Sue is attached hereto incorporated by reference as Exhibit B.

8.      The United States District Court for the District of Kansas has personal jurisdiction over Defendant inasmuch as Defendant conducts business within this District.

9.      The unlawful employment practices alleged herein were committed within this jurisdiction.

10.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant has offices, conducts business, and/or can be found in the District of Kansas, and the cause of action set forth herein has arisen and occurred in substantial part in this district.  Venue is also properly laid in this Court pursuant to 29 U.S.C. § 1132(e)(2) because Defendant has substantial business contacts within the State of Kansas.

**FACTS**

11.     Kevin Tadtman was employed by Intouch Solutions as an Analytics Director.  In this role he reported to Group Analytics Director and later Vice President of Analytics Heather Beach.

12.     As an Analytics Director, Mr. Tadtman's duties were generally characterized as a "working manager" by Executive Vice President Aaron Uydess.  His professional experience includes more than 10 years in a data/analytics role working with web analytics tools including

Adobe Analytics, Google Analytics, and Webtrends. Mr. Tadtman also has significant experience in the utilization of data visualization tools, including Tableau, Datorama, Domo, and Google Data Studio. His skills and responsibilities as Analytics Director included:

- Interpretation of business needs to develop strategic, KPI-based measurement plans and analysis;

- Setting standards for work generally and leading team members to data and insights-driven solutions

- Knowledge of Structured Query Language (SQL) and its importance in data manipulation;

- Expertise in A/B testing and multichannel attribution; and

- Advanced understanding of multichannel marketing analytics with a focus on digital platforms including web, email, paid media, social media, organic search, and mobile apps.

13. Mr. Tadtman's record of employment with Intouch Solutions was exemplary. At no time did he receive feedback from those to whom he reported that his performance was deficient in any way. Mr. Tadtman was not coached or placed on a performance improvement plan of any type, for any reason, at any time.

14. Mr. Tadtman's wife suffers from a uterine anomaly and various related conditions that have rendered normal pregnancy difficult.[1] The day before his employment with Intouch Solutions began, Mr. Tadtman's wife suffered another in a recent series of miscarriages. His wife's pregnancy-related complications have rendered her both disabled and perceived as disabled. His wife also has a record of impairments that may substantially limit one or more of her major life activities related to her ability to become pregnant.

---

[1] The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(1). The 2008 Americans with Disabilities Amendment Act ("ADAAA") broadly expanded the spectrum of conditions that fall within the definition of "disability." The EEOC regulations implementing the ADAAA also provide that conditions that are episodic can be disabilities if they are substantially limiting when active.

15. In January 2020, Group Analytics Director Heather Beach hired her personal friend Jessica Allin as an Analytics Director. From 2013 to 2016 Ms. Beach and Ms. Allin had worked together at Barkley, a Kansas City-based branding and marketing firm. Prior to working at Intouch Solutions, Ms. Allin had no analytics experience. Mr. Tadtman assisted in the screening of other candidates with significant analytics experience who were also considered for this role, but none were given the opportunity to interview before Ms. Allin was hired.

16. On March 3, 2020, Mr. Tadtman informed Heather Beach that his wife was pregnant, that she had recently entered the second trimester of her pregnancy, and that he planned to be away from work for 4 weeks of paternity leave following the birth of their child pursuant to the Intouch Solutions paternity policy. In response Ms. Beach asked "oh really, when is she due?" He responded that she was scheduled to give birth in August, and Ms. Beach replied "**that's going to make my life difficult. [Analytics Director] Ashley [Brown] will also be on maternity leave at that same time**." Mr. Tadtman responded that he did not know that Ms. Brown was pregnant or that she was scheduled to be away from work for the birth of her child. Ms. Beach and Ms. Brown have been personal friends for more than a decade, and they have previously worked together at Barkley and Bass Pro Shops. During the same conversation, Mr. Tadtman discussed his wife's previous pregnancy-related complications and miscarriages with Ms. Beach.

17. Later in March or April, Heather Beach was promoted to the position of Vice President Analytics.

18. On March 11, 2020, the United States Department of Health and Human Services ("HHS"), Centers for Disease Control and Prevention ("CDC"), and the World Health Organization ("WHO") announced that severe acute respiratory syndrome coronavirus 2 ("COVID-19") had been declared a pandemic. Beginning on March 13, Mr. Tadtman began to

work from home as part of Intouch Solutions senior leadership's efforts to protect its employees. Thereafter during the months of April and May he and his colleagues were regularly reassured by Executive Vice President Aaron Uydess and others that Intouch Solutions did not intend to terminate the employment of any employees in response to the COVID-19 pandemic and that their positions were not in jeopardy.

19.     Mr. Tadtman participated in a regularly scheduled Zoom teleconference on May 25 with Heather Beach, Jessica Allin, and Ashley Brown. During their meeting Mr. Tadtman asked Ms. Brown whether she intended to return to the office prior to the birth of her child in August. She replied that she did not plan to return to the office until after her maternity leave.

20.     On May 28, Mr. Tadtman received a positive performance evaluation from Heather Beach.  A copy of his performance evaluation and self-evaluation are maintained by Intouch Solutions using Engage, a human resources platform used by the Company for this purpose.

21.     On June 2, Mr. Tadtman met with Heather Beach on a regularly scheduled one-on-one Zoom teleconference. During their meeting Mr. Tadtman and Ms. Beach discussed the phased plan for employees to return to work at the Intouch Solutions office space in Overland Park, Kansas. As part of this discussion Mr. Tadtman informed Ms. Beach that he was uncomfortable returning to the office until after the birth of his child in order to avoid any potential COVID-19 exposure to his wife during the final weeks of her pregnancy. Ms. Beach acknowledged his request but did not otherwise respond.

22.     Throughout May and June, Mr. Tadtman received praise and numerous communications expressing positive feedback from colleagues, including Group Director Data Services Meredith Goulet, Data Architect Christopher Coleman, Media Director Abby Dugan, Senior Analyst Becky Ochs, Associate Media Director Amy Ogden, Group Account Director Anna

Waltke, Account Director Caitlan Brennan, Account Director Emily Alford, Associate Media Director Justin McGinnis, and Account Supervisor Hannah Kerr.

23. On June 12, Mr. Tadtman participated in a regularly scheduled one-on-one Zoom teleconference with Heather Beach. When Mr. Tadtman joined the teleconference he learned that HR Director Rachel Nunn was also a participant. Ms. Beach then said "as you might know your skillset is not what we are looking for in this position at this time" and informed Mr. Tadtman that his employment was terminated, effective immediately. Ms. Beach then abruptly disconnected from the meeting after only a few seconds in the teleconference.

24. Mr. Tadtman recalls that he was stunned to learn that he had been terminated. He asked Ms. Nunn whether they could ask Ms. Beach to rejoin the teleconference so that he could better understand her decision, and Ms. Nunn replied that they could not. He then asked Ms. Nunn whether she could provide any additional information about the basis for the Company's decision to terminate his employment. In response Ms. Nunn said she was "not close" to the situation and that she could provide no additional details about his termination or its justification. As Ms. Nunn began to discuss the documents she would provide to him related to his termination, Mr. Tadtman's wife walked into the room and he explained to her that he had just been fired. His wife, in her third trimester of her pregnancy, became visibly and audibly upset. Ms. Nunn became visibly upset as she watched the exchange with his wife and terminated the meeting shortly thereafter.

25. On June 16, Executive Vice President Aaron Uydess listed a contract opportunity with Intouch Solutions on LinkedIn that read:

> Looking for a contractor to support our analytics team from July to December 2020. Need analytic and managerial skills with an understanding of web, email, media, and healthcare.

>Interested in working in a best in class analytics department for one of the top healthcare advertising agencies in the industry?
>Please message me with interest and your resume.

26. On June 17, Intouch Solutions listed a Director of Analytics position on LinkedIn, ZipRecruiter, and various other platforms. The job responsibilities and qualifications mirror those for Mr. Tadtman's position as Analytics Director prior to the termination of his employment.

27. Ashley Brown and Jessica Allin remain employed by Intouch Solutions as Analytics Directors.

### COUNT ONE – DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

28. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

29. Plaintiff has satisfied all administrative prerequisites to the institution of this action. A timely Charge of Discrimination was filed with the EEOC on June 23, 2020. The Charge of Discrimination was filed within 180 days of the most recent incident of discrimination alleged therein.

30. Plaintiff is male.

31. Defendant treated Plaintiff less favorably than similarly situated female employees in the terms and conditions of his employment.

32. The actions of Defendant and its agents constitute discrimination against Plaintiff on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. ("Title VII").

33. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that his sex was a motivating and/or determining factor in Defendant's decision to terminate Plaintiff's employment.

34. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

35. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

36. Defendant failed to make good faith efforts to establish and enforce policies to prevent unlawful discrimination against its employees.

37. Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including Title VII.

38. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

39. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling him to an award of punitive damages.

40. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of his Complaint, for a finding that he has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 2000(e) *et seq.;* for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for his costs expended; for his

reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief the Court deems just and proper.

### COUNT TWO – DISCRIMINATION BY ASSOCIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

41. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

42. Plaintiff has satisfied all administrative prerequisites to the institution of this action. A timely Charge of Discrimination was filed with the EEOC on June 23, 2020. The Charge of Discrimination was filed within 180 days of the most recent incident of discrimination alleged therein.

43. Mr. Tadtman's wife suffers from a uterine anomaly and various related conditions that have rendered normal pregnancy difficult. His wife's pregnancy-related complications have rendered her both disabled and perceived as disabled. His wife also has a record of impairments that may substantially limit one or more of her major life activities related to her ability to become pregnant.

44. Plaintiff is known to have a relationship or association with his wife.

45. Plaintiff was qualified for his position at the time Defendant and its agents took adverse employment actions against him.

46. Defendant and its agents knew that an individual with whom Plaintiff has a relationship or association suffered from a disability, was perceived as disabled, or had a record of impairments that may substantially limit one or more major life activities.

47. The actions of Defendant and its agents constitute discrimination against Plaintiff on the basis of his relationship or association with an individual with a known disability, an individual who is perceived as disabled, or an individual with a record of impairments that may substantially limit one or more major life activities in violation of 42 U.S.C. § 12112(b)(4).

48. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that his relationship or association with an individual with a known disability was a determining factor in Defendant's decision to both alter the terms and conditions of and to terminate Plaintiff's employment.

49. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

50. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

51. Defendant failed to make good faith efforts to enforce its policies to prevent discrimination against its employees, including Plaintiff.

52. Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including the ADA.

53. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff.  Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

54. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling him to an award of punitive damages.

55. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful discrimination prohibited by 42

U.S.C. § 12112 *et seq.;* for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorney's and expert witness fees provided by 42 U.S.C. § 12205; and for such other and further relief the Court deems just and proper.

## COUNT THREE – FMLA INTERFERENCE

56. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

57. While employed by Defendant, Plaintiff qualified as an eligible employee under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA").

58. Plaintiff was entitled to the protections provided pursuant to the FMLA.

59. Plaintiff in good faith exercised his rights with Defendant under the FMLA to take leave following the birth of his child.

60. Plaintiff in good faith requested FMLA qualifying leave from Defendant in advance of the birth of his child.

61. Defendant interfered with Plaintiff's exercise of his rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1).

62. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that his exercise of his rights under the FMLA was a motivating and/or determining factor in Defendant's decision to terminate Plaintiff's employment.

63. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

64. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

65. Defendant failed to make good faith efforts to enforce its policies to prevent interference with the FMLA-related rights of its employees, including Plaintiff.

66. Defendant's conduct was willful thereby entitling Plaintiff to an equal amount as liquidated damages and other appropriate equitable relief.

67. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of his Complaint, for a finding that Defendant interfered with Plaintiff's right to seek FMLA-related leave; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and liquidated damages; equitable relief including reinstatement; for his costs expended; for his reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2617(a)(3); and for such other and further relief the Court deems just and proper.

## COUNT FOUR – FMLA RETALIATION

68. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

69. Plaintiff was entitled to the protections provided pursuant to the FMLA.

70. Plaintiff in good faith exercised his rights with Defendants under the FMLA to take leave following the birth of his child.

71. Plaintiff in good faith requested FMLA qualifying leave from Defendant in advance of the birth of his child.

72. Defendant retaliated against Plaintiff in the terms and conditions of his employment because of his request to utilize FMLA qualifying leave time, including in the termination of his employment in violation of 29 U.S.C. § 2615(a)(2).

73. Plaintiff's exercise of his rights under the FMLA was a motivating and/or determining factor in Defendants' decision to terminate Plaintiff's employment.

74. Defendant failed to make good faith efforts to enforce its policies to prevent retaliation against its employees, including Plaintiff.

75. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

76. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

77. Defendant failed to make good faith efforts to enforce its policies to retaliation against individuals who exercise their FMLA-related rights, including Plaintiff.

78. Defendant's conduct was willful thereby entitling Plaintiff to an equal amount as liquidated damages and other appropriate equitable relief.

79. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorney's fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of his Complaint, for a finding that Defendant retaliated against Plaintiff for the exercise of his rights under the FMLA; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and liquidated damages; equitable relief including reinstatement;

for his costs expended; for his reasonable attorney's and expert witness fees provided by 42 U.S.C. § 2617(a)(3); and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to trial by jury.

## DESIGNATED TRIAL LOCATION

Pursuant to D. Kan. Rule 40.2, Plaintiff hereby designates the place of trial as **Kansas City, Kansas**.

Respectfully submitted,



/s/ Lewis M. Galloway
Lewis Galloway         Kansas Bar No. 20172
1600 Genessee St Ste 918
Kansas City, MO 64102
Phone: (816) 442-7002
Fax:     (816) 326-0820
lewis@lglawllc.com

ATTORNEY FOR PLAINTIFF